UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

J & J SPORTS PRODUCTIONS, INC.,

Plaintiff,

v.

ISMAEL OCAMPO, a/k/a ISMAEL OCAMPO-GOMAR,

Defendant.

Case No. 5:15-cv-00982-EJD

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 14

## I. INTRODUCTION

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") is an international distributor of sports and entertainment programming and secured the domestic commercial exhibition rights to broadcast and sublicense one particular program, namely "Toe to Toe: Saul Alvarez v. Alfredo Angulo Light Middleweight Championship Fight Program" (the "Event"), which was telecast nationwide on March 8, 2014. In this action, Plaintiff alleges that Defendant Ismael Ocampo, also known as Ismael Ocampo-Gomar ("Defendnat"), illegally intercepted and broadcasted the Event at Defendant's commercial establishment, El Chiloko Restaurant.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331 and personal jurisdiction arises from service on Defendant in California. Burnham v. Super. Ct., 495 U.S. 604, 610-11 (1990). Plaintiff filed the Complaint on March 3, 2015. Defendant failed to answer and default was entered by the Clerk on May 22, 2015. See Docket Item No. 13.

Presently before the court is Plaintiff's application for default judgment. See Docket Item No. 14. The court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). Accordingly, the hearing scheduled for September 24, 2015, will be vacated.



United States District Court
Northern District of California

Plaintiff's motion will be granted for the reasons explained below.

## II. BACKGROUND

As noted, Plaintiff is in this business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. See Decl. of Joseph M. Gagliardi ("Gagliardi Decl."), Docket Item No. 14, at ¶ 4. Plaintiff was licensed to exhibit the Event at closed circuit locations located in commercial establishments. Id. at ¶ 5. In order for commercial establishments to broadcast the Event, owners were required to enter into a sublicense agreement with Plaintiff and pay a fee. Id. at ¶ 8. The sublicense provided commercial establishments the ability to publicly exhibit the Event. Id. at ¶ 7.

On March 8, 2014, investigator Yolanda Poblete viewed a broadcast of the Event at the El Chiloko Restaurant located in Salinas, California. See Decl. of Yolanda Poblete ("Poblete Decl."), Docket Item No. 14. Based on Poblete's observations, Plaintiff alleges that Defendant displayed the Event without obtaining the proper license. See Gagliardi Decl., at ¶ 9.

According to Poblete, Defendant was displaying an undercard event during the time she was at El Chiloko Restaurant. See Poblete Decl. Plaintiff also owned the rights to distribute that particular preliminary event. See Gagliardi Decl., at ¶ 9.

Poblete states that Defendant broadcast the Event on two televisions and that the establishment's capacity was "45+" persons. See Poblete Decl. Three separate headcounts between 8:47 p.m. and 8:54 p.m. revealed the number of patrons fluctuated between 28 and 33. Id. Defendant did not require a cover charge. Id.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Ninth Circuit has provided seven factors for consideration by the district court to determine whether to enter a default judgment, known commonly as the Eitel factors. They are:

United States District Court
Northern District of California

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing these factors, all factual allegations in the complaint are taken as true, except those with regard to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

## IV. DISCUSSION

### A. The Eitel Factors

This court has previously found the Eitel factors weigh in favor of default judgment under nearly identical circumstances. This case is no different.

As to the first factor, denying Plaintiff's application for default judgment would make little sense since Defendant has refused to litigate this action. The court would hear and review the same evidence it has before it now if Plaintiff was required to prove up its case at an uncontested trial. For that reason, Plaintiff would be prejudiced in the form of further delay and expense if the court were to deny the present application. This factor weighs in favor of default judgment.

As to the second and third factors, Plaintiff's substantive claims appear meritorious and the Complaint is sufficiently pled. Plaintiff has alleged Defendant violated two sections of Title 47, and the alleged activities of Defendant appear to have violated at least one of those sections. Additionally, Plaintiff has identified relevant laws pursuant to which the court may provide relief. These factors also weigh in favor of default judgment.

As to the fourth factor, the sum of money at stake has yet to be determined but the damages cannot exceed the amounts specified in 47 U.S.C. § 553 (for reasons more fully explained below), and the maximum amount allowable for the tort of conversion. Accordingly, statutory damages cannot exceed $10,000 and enhanced damages may not exceed $50,000. See 47 U.S.C. § 553(c)(3)(A)(ii), (B). Plaintiff is seeking $2,200 in damages for conversion. All things considered, the relatively small sum of damages weighs in favor of default judgment.

United States District Court
Northern District of California

As to the fifth factor, there is no dispute of material fact. Indications that there is a dispute of material fact can weigh against entry of default judgment. See Eitel, 782 F.2d at 1471-72. But here, Defendant has not disputed any of Plaintiff's contentions since Defendant failed to respond to either the Complaint or this motion, and the majority of material facts pled in the Complaint are supported or explained by affidavit or declaration.

For the sixth factor, it is unlikely that the default was the result of excusable neglect. This action was filed nearly seven months ago and the docket reveals that Defendant was properly noticed of this action through substitute service at the establishment. In addition, Defendant was served with a copy of instant application. Defendant failed to respond despite these notifications. This factor, therefore, weighs in favor of default judgment.

Finally, the seventh factor weighs in favor of default judgment because "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate." J & J Sports Prods, Inc. v. Concepcion, No. 10-CV-05092, 2011 U.S. Dist. LEXIS 60607, at *5, 2011 WL 2220101 (N.D. Cal. June 7, 2011). Thus, the general policy in favor of merits decisions is outweighed by the specific considerations made in this case. As such, this factor does not prevent entry of default judgment here.

**B. Calculation of Damages**

**i. Statutory Violations**

Plaintiff requests $10,000 in statutory damages as a result of an alleged violation of 47 U.S.C. § 605(e)(3)(B)(iii), which prohibits any person from receiving or transmitting "wire or radio" signals except through authorized channels. 47 U.S.C. § 605(a). More specifically, the statute "'prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming.'" J & J Sports Prods., Inc. v. Ro, No. 09-CV-02860, 2010 U.S. Dist. LEXIS 21425, at *7, 2010 WL 668065 (N.D. Cal. Feb. 19, 2010) (quoting J & J Sports Prods., Inc. v. Guzman, No. 08-CV-05469, 2009 U.S. Dist. LEXIS 32273, at *5, 2009 WL 1034218 (N.D. Cal. Apr. 16, 2009)). The statute provides for statutory damages ranging from $1,000 to $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff also mentions another potential basis for relief - 47 U.S.C. § 553(c)(3)(A)(ii) - but does not directly request damages under that statute. Plaintiff did, however, allege that Defendant violated that statute in the Complaint. Section 553 proscribes "a person from 'intercepting or receiving or assisting in intercepting or receiving any communications service offered over a cable system.'" Ro, 2010 U.S. Dist. LEXIS 21425, at *8 (quoting J & J Sports Prods, Inc., v. Manzano, 2008 U.S. Dist. LEXIS 84931, at *5, 2008 WL 4542962 (N.D. Cal. Sept. 29, 2008)). In essence, § 553 prohibits "both illegally receiving cable programming and helping others to illegally receive cable programming." Manzano, 2008 U.S. Dist. LEXIS 84931, at *5. Statutory damages under Section 553 range from $250 to a maximum of $10,000, "as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii).

Sections 605 and 553 are not coextensive because each section prohibits a distinct activity of interception. Indeed, "[a] signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast." Ro, 2010 U.S. Dist. LEXIS 21425, at *8. "But he cannot violate both by a single act of interception." Id. at *8.

Here, Plaintiff concedes that Poblete was unable to determine the exact means used by Defendant to intercept the Event. In fact, Poblete's provides no information concerning Defendant's method of interception. Under these circumstances such as these, this court has found § 553 a more appropriate basis for the calculation of damages. See Joe Hand Promotions, Inc. v. Lorenzana, No. 5:13-cv-05925 EJD, 2014 U.S. Dist. LEXIS 110784, at *8-9, 2014 WL 3965097 (N.D. Cal. Aug. 11, 2014). This is because a satellite dish, which requires an unobstructed view of the sky, is not easily hidden. Had El Chiloko Restaurant been using one on the night Poblete visited she most likely would have seen it. A cable box, on the other hand, is more easily hidden. On this showing, the court concludes that Defendant must have intercepted the program via a cable signal in violation of § 553 and not § 605.

Consistent with its prior orders on this topic, the court awards Plaintiff $250 in statutory damages under § 553. This amount is appropriate here, as it was in other cases, because Plaintiff did little if anything to develop the record. Plaintiff's investigator failed to determine the one

United States District Court
Northern District of California

critical fact that separates a § 553 violation from a § 605 violation: the means used to intercept the Event. In fact, Plaintiff essentially relies on a seven-minute visit by Poblete to justify a maximum damages award. That simply will not do for anything more than the minimum.

As to Plaintiff's request under § 553(c)(3)(B), enhanced damages of no more than $50,000 may be warranted if the court finds "that the violation was committed willfully and for purposes of commercial advantage or private financial gain." The Ninth Circuit has not set forth controlling factors for the determination of when enhanced damages are appropriate in this context, but various factors specific to this unique line of cases have been considered by district courts. These include the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant." Concepcion, 2011 U.S. Dist. LEXIS 60607, at *10. Enhanced damages have also been awarded when the defendant has violated sections 605 or 553 on previous occasions. See J & J Sports Prods., Inc. v. Paniagua, No. 10-CV-05141-LHK, 2011 U.S. Dist. LEXIS 33940, at *5-6, 2011 WL 996257 (N.D. Cal. Mar 21, 2011).

In this case, Defendant did not charge a cover to patrons nor is there any evidence that Defendant increased prices or required food or drink purchases during the Event. While the number of patrons at Chiloko Restaurant on the night of the event was more than in other similar cases, Plaintiff did not present any evidence to show that the amount of customers in the establishment on March 8, 2014, was any more than on a standard night. Poblete could have easily obtained such information by making another visit, but did not. Accordingly, the facts do not support Plaintiff's contention (or assumption) that commercial or private financial gain was Defendant's motivation in displaying the Event. Contrary to Plaintiff's legal argument, this court does not find these issues "firmly decided" by out-of-circuit district court opinions.

Plaintiff is entitled to $1,200 in enhanced damages, which represents the value of the commercial license to air the program.[1] This amount properly accounts for the broadcast's impact

[1] In his declaration, Gagliardi states that the commercial sublicense fee for Defendant would have been $2,200. However, the price list attached to the declaration indicates the fee would have been

United States District Court
Northern District of California

on Plaintiff and is sufficient deter future conduct by Defendant and other similarly-situated establishments.

**ii. Conversion**

Plaintiff requests damages for the tort of conversion in the amount Defendant would have been required to pay for a license, in this case $1,200. See Cal. Civ. Code § 3336. "The elements of conversion are: 1) ownership of a right to possession of property; 2) wrongful dissolution of the property right of another; and 3) damages." Paniagua, 2011 U.S. Dist. LEXIS 33940, at *6. Damages for conversion are "based on the value of the property at the time of the conversion." Id.

Here, Plaintiff has shown that it owns the right to distribute the Event and has properly alleged the misappropriation of the right to distribute the program. As to damages, the "value of the property" was the value of the commercial license, or $1,200. Accordingly, the court awards Plaintiff $1,200 in damages for conversion.

## V. ORDER

Based on the foregoing, Plaintiff's application for default judgment is GRANTED. Judgment shall be entered in favor of Plaintiff and against Defendant in the amount of $2,650.00 in total damages.

The hearing scheduled for September 24, 2015, is VACATED. The Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: September 18, 2015



EDWARD J. DAVILA
United States District Judge

$1,200 for the number of patrons that El Chiloko Restaurant can accommodate.